# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER HARMON,<br>individually and as<br>Surviving Mother of N.J.,<br>Decedent, and on BEHALF OF<br>THE CLASS<br>OF PERSONS DESIGNATED<br>BY R.S.MO. § 537.080,, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiff, | ) | No. 2:21-CV-00026-SEP |
| | ) | |
| v. | ) | |
| | ) | |
| SECOND JUDICIAL CIRCUIT<br>OF THE STATE OF MISSOURI,<br>et al., | )<br>)<br>) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

COME NOW Defendants Second Judicial Circuit of the State of Missouri (Second Circuit), Jeff Hall, Westley Seifert, Misty Goings, Frank Vorhees, Jessica Morrow, Bronson Love, Diana Shields, Daniel Kennedy, Rachel Van Beers, Lisa Wassenhove, Betty Robertson, and Michelle Govro, through counsel, the Office of the Missouri Attorney General, and offer the following suggestions in support of their Motion to Dismiss Plaintiff's Complaint for

Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief May be Granted.

## Standard of Review

In assessing a motion under Federal Rule of Civil Procedure 12(b)(6), the complaint should not be dismissed unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must presume the factual allegations are true and accord all reasonable inferences from those facts to the nonmoving party. *Cole v. Homier Distributing Co.*, 599 F.3d 856, 861 (8th Cir. 2010). Under these Rule 12(b)(6) standards, this Court should grant this motion to dismiss. Even if every factual allegation is presumed true and Plaintiff is accorded all reasonable inferences, the complaint still does not state an actionable claim.

## I. The Court lacks subject matter jurisdiction as all of Plaintiff's claims are for wrongful death.

Plaintiff claims against the Second Circuit and the above-named individual Defendants are claims for wrongful death, a state statutory claim. Each and every claim in the Complaint seeks damages for the alleged wrongful death of Plaintiff's decedent.  As these claims are properly state law claims pursuant to the Missouri Wrongful Death Statue, §537.080, no federal jurisdiction exists over these claims.

In Counts I, II, III, and VIII, Plaintiff purports to assert claims under 42 USC 1983 against the Second Circuit and the above-named individual Defendants. The titles of each count indicate these are brought, under various theories, as claims of deprivations of Decedent's civil rights. However, each claim, after enumerating how Decedent was allegedly deprived of his civil rights, concludes with the allegation that such deprivation was a "direct and proximate cause" of his death.

Revised Statute of Missouri §537.080, Missouri's Wrongful Death Statute, states,

> "Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured[.]"
>
> Rev. Stat. Mo. §537.080(1).

Further, Missouri's survivorship statute states:

> "Causes of action for personal injuries, *other than those resulting in death*, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death."
>
> Rev. Stat. Mo §537.020 (emphasis added).

Actions for personal injuries resulting in death, such as the one brought by Plaintiff, wherein she alleges the deprivations of Decedent's civil rights were the "direct and proximate cause" of his death, may only be brought under the

Missouri wrongful death statute. *Mickels v. Danrad*, 486 S.W.3d 327, 329 (Mo. banc 2016). In cases where the personal injury resulted in death, a survivorship action is barred as a matter of law. *Bamberger v. Freeman*, 299 S.W.3d 684, 687 (Mo. App. E.D. 2009).

Because Plaintiff's claims under 42 USC 1983 are for personal injuries resulting in the death of decedent, and because, under Missouri law, an action for personal injury resulting in death may only be brought as a wrongful death action, Plaintiff's federal law claims are actually state law claims and, as such, this court does not have subject matter jurisdiction.

## II.   Defendant Second Circuit should be dismissed as they are entitled to sovereign immunity and are not a person as required for a claim under Section 1983, nor are respondeat superior claims allowed under Section 1983.

In the event this Court decides the mention of Section 1983 provides a basis for jurisdiction in the federal court, all of Plaintiffs claims against the Second Circuit should still be dismissed. The Second Circuit is entitled to sovereign immunity and, therefore, all claims against it are barred. Additionally, the Second Circuit is not a "person" able to be subjected to suit for the purposes of claims brought under 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989).  Moreover, Plaintiff's claims against the Second Circuit are made under a theory of *respondeat superior*, which does not apply to claims brought under Section 1983. (Doc. 30, pars.

10, 14, 18, 22, 25, 29, 33, 37, 41, 45, 49).  *See Frentzel v. Boyer*, 297 Fed.Appx. 576, 577 (8th Cir. 2008). (In Frentzel, the Eighth Circuit affirmed the district court's grant of summary judgment, clearly stating, "the doctrine of *respondeat superior* does not apply under Section 1983[.]").

The Second Circuit is a statutory entity, created under Article V, Section 1 of the Missouri Constitution. Mo. Const., Art. V, Sec. 1. The judicial circuits are considered "arms of the state" for the purposes of sovereign immunity. *McKlintic v. 36th Judicial Circuit Court*, 464 F.Supp.2d 871, 875 (E.D.Mo. 2006). Absent an express statutory waiver, the State of Missouri and its agencies generally have sovereign immunity from suit. Rev. Stat. Mo. §537.600. Further, the Eleventh Amendment to the US Constitution protects states from suit, absent their consent. U.S. Const., Amdt. XI. Both sovereign immunity and the Eleventh Amendment protection are waived in only three circumstances in Missouri: 1) where a public employee negligently operated a motor vehicle in the course of their duties; 2) where an injury resulted from dangerous conditions of public property; and 3) where the public entity has purchased liability insurance (but only to the extent of the policy's coverage). *Id*.

Plaintiff contends the death of N.J. was the result of numerous alleged failures by the Second Judicial Circuit and the individually-named Defendants. However, Plaintiff has not pleaded that any of the alleged

failures of the Second Judicial Circuit are within one of the three exceptions noted above. Because there is no waiver, statutory or otherwise, of Missouri's sovereign immunity  or of its protection under the Eleventh Amendment, the Second Circuit, as a state entity, should be dismissed from this suit entirely.

Plaintiff also alleges Defendant Second Circuit failed to train or supervise on the part of other Defendants, but as alleged these claims against the Second Circuit are merely  *respondeat superior* claims which are not proper Section 1983 claims *See Frentzel v. Boyer*, 297 Fed.Appx. 576, 577 (8th Cir. 2008). In Frentzel, the Eighth Circuit further stated the detainee did not plead sufficient facts to establish Boyer's liability under a failure-to-train or – supervise theory, as a prison supervisor's liability only arises where a failure to train or supervise offending employee caused the civil rights deprivation and the supervisor had notice the training was inadequate. Frentzel at 577 citing *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)

The Second Circuit should be dismissed as a defendant because it is entitled to sovereign immunity and Eleventh Amendment protection, is not a person subject to suit under Section 1983, and is only implicated via *respondeat superior*, which does not apply to Section 1983 claims.

**III.   The individually-named Defendants should be dismissed from the suit entirely as they are entitled to both qualified and official immunity.**

In the event, this Court decides the mention of Section 1983 provides a basis for jurisdiction in the federal court, all claims against the individual Defendants should still be dismissed.  The individual Defendants are entitled to qualified immunity on all claims under which they have been implicated. Qualified immunity provides governmental officials with immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Whether the right at issue was 'clearly established' is a question of law for the court to decide." *Wright v. United States*, 813 F.3d 689, 695-96 (8th Cir. 2015).

Further, the standard for qualified immunity cannot be applied in a general sense. A plaintiff cannot avoid the rule of qualified immunity "simply by alleging the violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). As the Supreme Court explained in Anderson:

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful…but it is to

say that, in light of pre-existing law, the unlawfulness must be
apparent.

*Id* at 640.

The Court emphasized that this subjective legal reason test requires a
"fact-specific inquiry." *Id* at 641. Additionally, qualified immunity "'gives
ample room for mistaken judgments' by protecting 'all but the plainly
incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502
U.S. 224, 229 (1991).

Here, the Defendants violated no law, clearly established or otherwise.
Even if assumed true, Plaintiff's allegations are not sufficient to establish
that the Defendants have violated any clearly-established right. Plaintiff
alleges N.J. (Decedent) was deprived of his substantive due process rights by
above Defendants in Counts I, III, and VIII. (Doc. 30, par. 178). To establish a
substantive due process claim under the 14th Amendment, a plaintiff must
first establish whether they (or, as in this case, the decedent) possessed a
right arising under the 14th Amendment. *Creason v. City of Washington*, 435
F.3d 820, 824 (8th Cir. 2006). Second, it must be shown the government
action deprived plaintiff/decedent of that right within the meaning of the
14th Amendment's Due Process Clause. *Id*. To establish this, the
plaintiff/decedent must show "that the government action complained of is

truly irrational, that is something more than… arbitrary, capricious, or in violation of state law." *Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999).

Here, Plaintiff alleges Decedent had a right to life, liberty, to be protected from the allegedly "known risks" of suicide, to have his serious medical needs addressed, and to have a humane and safe living environment while confined under state authority. Plaintiff further alleges Defendants knew or had constructive knowledge of Decedent's high risk of suicide due to his known mental health conditions and medical history. However, as Plaintiff has cited no law or authority, it is unclear which of these are actual rights protected by the 14th Amendment. Plaintiff further asserts, in Count II, Decedent's rights were violated due to a "state-created danger," from the individually named Defendants. To establish a "state-created danger,", Plaintiff must show Decedent was 1) a member of a limited, precisely definable group, 2) the government actors' conduct put them at significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to the government actors, 4) the government actors acted "recklessly" in conscious disregard of the risk, and 5) the government conduct "shocks the conscience." *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005).

Plaintiff cannot support her claims that Decedent's rights were violated. The facts, as alleged by Plaintiff and assumed to be true, are as follows: Decedent was admitted to the BNJJC on February 20, 2018. (Doc. 30, par.

81). While a resident of the BNJJC, Decedent received mental health treatment from co-defendants Tracey Francis and Preferred Family Healthcare. (Doc. 30, pars. 98 and 257). Decedent was provided medication throughout his stay at BNJJC, until he declined to take it April 9-11, 2018. (Doc. 30, par. 139). Decedent was provided the option for additional room checks, which he declined. (Doc. 30, pars. 142-143). On the day he attempted suicide, Decedent was checked on three times in a matter of 22 minutes through a "peep-hole" in his door. (Doc. 30, pars. 145-151). On the third check, Defendant Jessica Morrow, a female, entered the room itself. (Doc. 30, par. 152). Morrow observed that Decedent's bathroom door was closed. (Doc. 30, par. 156). Defendant Jeff Hall, a male, and another individual entered the room, saw Decedent had attempted suicide, initiated CPR to resuscitate Decedent, and contacted emergency medical responders. (Doc. 30, pars. 153-158). Even if we assume the Defendants were aware of a potential risk of suicide, it is wholly unclear how providing therapeutic medical treatment, in the form of therapy and medication or the frequent checks in the 22 minutes before the suicide attempt, could be considered a "reckless" disregard of such risk, how any of this conduct "shocks the conscience," or how any of their actions are "irrational."

Because Plaintiff cannot establish that any clearly established right was violated by the above individually-named Defendants, these Defendants should be dismissed from the suit.

These same Defendants are further entitled to official immunity. Official immunity protects public officers acting within the scope of their authority from liability for injuries arising from their discretionary acts or omissions, but not from liability for torts committed when acting in a ministerial capacity. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). The difference between "discretionary" and "ministerial" depends upon "the degree of reason and judgment required." *Id*. The *Southers* court further explained, "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued. A ministerial function… is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id*. (internal citations omitted).

Here, nearly all the actions complained of were discretionary acts. The determination to admit Decedent was based on the discretion of the admitting staff, Defendants Westley and Seifert, after they received a referral form. (Doc. 30, par. 103). His treatment was informed by the intake

assessments Decedent completed on two different occasions. (Doc. 30, pars. 111 and 117). Treatment Team Meetings were held regarding Decedent's care. (Doc. 30, par. 119). The decision for an emergency discharge occurred after two months of treatment and at least two family support meetings (Doc. 30, par. 123). None of the facts alleged show these were anything but discretionary acts on the part of public Defendants.

Because all of the acts which Plaintiff alleges were responsible for Decedent's suicide attempt and ultimate death were discretionary in nature, as alleged throughout her Complaint, the individually-named Defendants are entitled to official immunity.

## IV.  Defendants should be dismissed as Plaintiff has not alleged sufficient facts to show Defendants are the proximate cause of the death of N.J.

In the event, this Court decides the mention of Section 1983 provides a basis for jurisdiction in the federal court, Plaintiff's claims should still be dismissed against all defendants because Plaintiffs fail to plead sufficient facts to show proximate causation. Plaintiffs allege their claims of wrongful death under a theory of negligence. Among the elements Plaintiff must prove is that Defendants were both the cause-in-fact of Plaintiff's death and the proximate cause. Test of proximate cause is whether the defendant's negligence is that cause or act of which the injury was the natural and probable consequence. *Heffernan v. Reinhold*, 73 S.W.3d 659, 664-65 (Mo.

App. E.D. 2002)(citing *Williams v. Missouri Highway and Transp. Com'n*, 16 S.W.3d 605, 611 (Mo. App. W.D. 2000). Proximate cause is determined by looking back and examining whether the injury appears to be a reasonable and probable consequence of the conduct. *Robinson v. Missouri State Highway and Transp. Com'n*, 24 S.W.3d 67, 78 (Mo. App. W.D. 2000).

As discussed above, Defendants' conduct was to admit Decedent into a treatment facility for numerous reasons including suicidal ideation, to provide him with therapy via co-defendants Francis and Preferred Family Healthcare, to provide him with medication until he refused to take it, and to monitor his activity, which ultimately resulted in Defendants finding Decedent while he was still alive. (Doc. 30, pp. 14-29). No reasonable person, looking at the conduct of Defendants, would think that a suicide attempt is the reasonable and probable consequence of such conduct.

As Plaintiff cannot show Decedent's suicide attempt and ultimate death were the reasonable and probable consequence of Defendants' conduct, they cannot show the required element of causation, and the above-named Defendants should be dismissed from the wrongful death counts in Plaintiff's Complaint.

## Conclusion

Plaintiff's Complaint should be dismissed for four ultimate reasons:

1. This Court lacks subject matter jurisdiction, as all of Plaintiff's claims are substantively state claims for wrongful death.

2. The Second Circuit is entitled to sovereign immunity and Eleventh Amendment protection from all claims, is not a "person" for the purposes of suit under 42 U.S.C. 1983, and cannot be found liable for 42 U.S.C. 1983 under a theory of *respondeat superior*.

3. Individually named Defendants are entitled to qualified and official immunity from suit.

4. Plaintiff cannot prove Defendants' conduct was the proximate cause of Decedent N.J.'s suicide attempt and ultimate death.

WHEREFORE, for the foregoing reasons, Defendants request this Court dismiss Plaintiff's Complaint, in whole or in part, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General

/s/ *Matthew W. Vineyard*
Matthew W. Vineyard
Assistant Attorney General
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102
(573) 751-3424 (Telephone)
(573) 751-9456 (Facsimile)
Matthew.Vineyard@ago.mo.gov

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2021, a copy of the foregoing was sent via the Court's electronic filing system to all counsel of record.

___/s/Matthew W. Vineyard_____

Matthew W. Vineyard
Assistant Attorney General